United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  JANICE D. MCCOY,                        No. C 04-04607 CW

14          Plaintiff,                      ORDER DENYING
                                            DEFENDANT'S
15      v.                                  MOTION FOR
                                            SUMMARY JUDGMENT;
16  JO ANNE B. BARNHART,                    AND GRANTING
    Commissioner of the Social Security    PLAINTIFF'S
17  Administration,                         MOTION TO REMAND

18          Defendant.

19  _____/

20

21      Plaintiff Janice McCoy has filed a motion for summary judgment

22  or, in the alternative, remand to the Commissioner of the Social

23  Security Administration (SSA) for further proceedings.  Defendant

24  Jo Anne Barnhart, in her capacity as Commissioner of the SSA,

25  opposes this motion and cross moves for summary judgment.  Having

26  considered all of the papers filed by the parties, the Court DENIES

27  Plaintiff's motion for summary judgment, DENIES Defendant's cross-

28

**United States District Court**
For the Northern District of California

1  motion, and GRANTS Plaintiff's motion for remand.

2                              BACKGROUND

3  I.   Procedural History

4       Plaintiff filed applications for a period of disability,

5  disability insurance benefits (DIB) and supplemental security

6  income (SSI) benefits on February 2, 2001.  The SSA denied her

7  benefit applications by notices of initial determination dated

8  August 3, 2001.  No appeal was taken.

9       On January 26, 2002, Plaintiff re-applied for DIB and SSI

10 under Titles II and XVI of the Social Security Act, alleging

11 disability beginning on May 1, 2001, due to neck/upper back and

12 right ankle pain.  Plaintiff's application and request for

13 reconsideration were denied on the ground that she retained the

14 ability to do her past work as a warehouse worker.  On December 6,

15 2002, Plaintiff requested a hearing.  A hearing was held before an

16 Administrative Law Judge (ALJ) on January 22, 2004.  Plaintiff

17 appeared and was represented by counsel.  A vocational expert also

18 testified at the hearing.  On February 5, 2004, the ALJ issued a

19 decision finding that Plaintiff was not disabled.

20      Plaintiff filed a timely request with the Appeals Council for

21 review of the ALJ's decision, submitting additional evidence and

22 argument.  On August 25, 2004, the ALJ's decision became the

23 Commissioner's final decision when the Appeals Council denied

24 Plaintiff's request for review.  Thereby, Plaintiff commenced the

25 instant action for judicial review.

26

27

28                               2

II.   Factual History

   A.   Plaintiff's Age, Education and Work Experience

   Plaintiff was born on September 19, 1956, and was forty-five years old when she filed her applications for Social Security disability benefits.  She has a high school education and had been employed as a waitress, warehouse worker, food service worker and cashier.

   Prior to filing her initial application in February, 2002, Plaintiff began working as a waitress at the Home for Jewish Living. (Transcript (Tr) 105, 130).  She worked from January, 2002, until March 31, 2003, earning a total of $18,826.31 in 2002, which qualifies as substantial gainful activity.  (Tr 130).  Thus, at the hearing before the ALJ, Plaintiff amended the alleged onset date to April 1, 2003, the day after she left her job as a waitress.  (Id.)

   B.   Plaintiff's Medical History

   On May 19, 1998, Plaintiff was allegedly injured at work when she had to pull milk cartons and carry food trays up two flights of stairs for two days because the elevators were not operational. (Tr 136, 259).  On May 11, 1999, Plaintiff was referred to the office of John D. Warbritton, M.D.  (Tr 134).  In a letter dated August 16, 1999, Dr. Warbritton observed Plaintiff had "a significant grip strength loss in the right dominant hand . . . a moderate limitation of neck flexion and right lateral bending and rotation . . . a moderate cervical paraspinal muscle spasm, and . . . a significant spasm and tightness in the muscles about the right shoulder girdle." (Tr 134-35).  Dr. Warbritton concluded that Plaintiff experienced "permanent residuals referable to her

United States District Court

For the Northern District of California

3

neck and upper back which would preclude her from heavy lifting."
(Tr 135).

Plaintiff received follow-up pain management with Dr.
Warbritton in December, 1999.  (Tr 205).  She complained of right
elbow pain from driving and using the keyboard at work.  (Id.)  In
December, 2000, Plaintiff underwent an open reduction internal
fixation surgery on her right ankle, which was fitted with screws
and a plate.  (Tr 147, 160-61).  In June, 2002, Dr. Thomas Dorsey
performed a consultation examination at the request of the SSA.
(Tr 166).  Dr. Dorsey observed that Plaintiff's right ankle showed
a "full range of motion" and that she had obtained an "excellent
clinical result" from the ankle surgery.  (Tr 168-69).  Dr. Dorsey
also concluded that based on his examination, Plaintiff had "no
impairment-related physical limitations."  (Tr 169).

On visits to Alameda County Medical Center, Plaintiff reported
that she continued to experience numbness and pain in her hand,
arm, shoulder and knee during November and December, 2002.  (Tr
295-97, 299).  In July and August, 2003, Plaintiff complained of
similar symptoms.  (Tr 291-94).

In September, 2003, Plaintiff's right knee was examined by
MRI.  (Tr 271).  The findings noted "degenerative changes of the
patellar articular surface," a "small cyst," a "complete rupture of
the anterior cruciate ligament," and a "complex tear of the
posterior horn and junction region of the medical meniscus . . .
and . . . lateral meniscus."  (Id.).  In December, 2003 and March,
2004, Plaintiff sought treatment for right knee and ankle pain.
(Tr 323, 326).

United States District Court

For the Northern District of California

4

United States District Court

For the Northern District of California

From August, 2003 to October, 2003, Plaintiff experienced numbness in her right hand.  (Tr 287, 289, 291, 327).  Plaintiff submitted the following additional evidence to the Appeals Council concerning her right hand numbness:  On February 17, 2004, the results of an electromyographic examination (EMG) showed moderately severe right carpal tunnel syndrome and right cubital tunnel syndrome.  (Tr 324-25).  In March, 2004, Plaintiff also sought treatment for right wrist pain.  (Tr 323).

Plaintiff reported that she takes the following prescribed medications:  Naprosyn[1] (375 mg, twice daily), Vicodin[2] (500 mg, four each day), and Flexeril[3] (10 mg, three each day).  (Tr 116).  Plaintiff also takes Prozac for "stress."  (Tr 20).

Plaintiff submits two attachments to her motion which were not part of the administrative record.  The first document is a "History and Physical Examination," dated September 30, 2004.  It notes the possibility of two surgeries:  right wrist carpal tunnel release surgery and right ankle surgery to remove hardware.  Pl.'s Ex. A.  The second document is not dated but Plaintiff asserts that it was prepared on December 29, 2004.  According to this "Operative

---

[1] "a member of the arylacetic acid group of non-steroidal anti-inflammatory drugs."  Physicians' Desk Reference, 59th ed. (PDR), 2874 (2005).

[2] "Hydrocodone bitartrate and acetaminophen is supplied in tablet form for oral administration . . . Hydrocodone is a semisynthetic narcotic analgesic and antitussive with multiple actions qualitatively similar to those of codeine.  Most of these involve the central nervous system."  PDR at 526.

[3] "Cyclobenzaprine HCl relieves skeletal muscle spasm of local origin without interfering with muscle function.  It is ineffective in muscle spasm due to central nervous system disease."  PDR at 1930.

**United States District Court**
For the Northern District of California

Report," Plaintiff had surgery to remove screws and a plate from her right ankle.  Pl.'s Ex. B.  Plaintiff acknowledges that she has not yet had the planned carpal tunnel release surgery.

C.   ALJ Findings

At step one, the ALJ found Plaintiff has not been engaged in substantial gainful activity since April 1, 2003.  (Tr 21).  At step two, the ALJ concluded that the medical evidence showed "severe" medically determinable impairments which account for some degree of right knee and right ankle pain.  (Tr 20).  The ALJ found no medically determinable explanation for Plaintiff's complaints of neck and shoulder pain or numbness in her hand.  (<u>Id.</u>).  In addition, the ALJ found the record insufficient to show "severe" depression or other mental impairments expected to last for twelve continuous months.  (<u>Id.</u>).

At step three, the ALJ concluded that Plaintiff had no impairments or combination of impairments meeting or equaling in severity any Listing-level impairment.  (Tr 22).  The ALJ also found that Plaintiff retained the residual functional capacity (RFC)[4] to perform a "full range of 'sedentary' work activities."[5]

---

[4] The SSA defines RFC as follows:

Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations.  20 C.F.R. § 416.945(a)

[5] Sedentary work involves:

lifting no more than ten pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and

(Id.).  Furthermore, the ALJ did not find Plaintiff's symptom allegations credible or reliable.  At step four, the ALJ accepted the testimony of the vocational expert Dr. Gerald Belchick that Plaintiff would be unable to perform any of her past jobs.  (Id.). Finally, at step five, consulting the Medical Vocational Guidelines, the ALJ concluded that considering Plaintiff's age, high school education, work experience and RFC for "sedentary" work, Plaintiff was not disabled because she could perform other substantial gainful work.  (Id.).

LEGAL STANDARD

I.   Overturning a Denial of Benefits

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.  Walker v.

standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567

7

<u>Matthews</u>, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  In short, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not.  <u>Martinez</u>, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be upheld even when there is evidence on the other side, <u>Hall v. Sec'y of Health, Educ. & Welfare</u>, 602 F.2d 1372, 1374 (9th Cir. 1979), or when the evidence is susceptible to more than one rational interpretation, <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the ALJ as to any fact will be conclusive.  42 U.S.C. § 405(g); <u>Vidal v. Harris</u>, 637 F.2d 710, 712 (9th Cir. 1981).

II.  Establishing Disability Under the Social Security Act

Under the Social Security Act, "disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423 (d)(1)(A).  The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work."  42 U.S.C. § 423(d)(2)(A).  In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."  42 U.S.C. § 423(d)(3).

United States District Court

For the Northern District of California

To determine whether a claimant is disabled within the meaning of the Social Security Act, the Social Security Regulations set out a five-step sequential process. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1395 (9th Cir. 1991); 20 C.F.R. § 404.1520 (b)-(f). The burden of proof is on the claimant in steps one through four. <u>Sanchez v. Sec'y of Health & Human Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987). In step one, the claimant must show that she or he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). In step two, the claimant must show that he or she has a "medically severe impairment or combination of impairments" that significantly limits his or her ability to work. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(c). If the claimant does not, he or she is not disabled. Otherwise, the process continues to step three for a determination of whether the impairment meets or equals a "listed" impairment which the regulations acknowledge to be so severe as to preclude substantial gainful activity. <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If this requirement is met, the claimant is conclusively presumed disabled; if not, the evaluation proceeds to step four. At step four, it must be determined whether the claimant can still perform "past relevant work." <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he or she is not disabled. If the claimant meets the burden of establishing an inability to perform prior work, the burden of proof shifts to the Commissioner for step five. At step five, the Commissioner must

show that the claimant can perform other substantial gainful work

that exists in the national economy.  Yuckert, 482 U.S. at 141; 20

C.F.R. § 1520(f).

DISCUSSION

Plaintiff presents three issues for review.  First, she

challenges the ALJ's findings at step two as not supported by

substantial evidence.  Second, Plaintiff contends that the ALJ

improperly discounted her credibility.  And third, Plaintiff

asserts that the ALJ's reliance on the Medical Vocational

Guidelines was improper.

I.    Step Two Severe Impairment Determination

Plaintiff disputes the ALJ's finding that her neck pain,

shoulder pain, and numbness in her hands were not severe because

there was no medically determinable explanation for it.  Defendant

responds that, although the ALJ acknowledged Plaintiff's subjective

complaints of pain and numbness, there was no medical evidence to

connect these complaints to any severe impairment.  Moreover, the

evidence Plaintiff submitted to the Appeals Council would not have

changed the outcome of the case.

Step two requires that a claimant have one or more "severe

impairments that significantly limit [her] physical or mental

ability to conduct basic work activities."  Celaya v. Halter, 332

F.3d 1177, 1180 (9th Cir. 2003).  The step two severity

determination is intended to identify those claimants whose

impairments are so slight that they are unlikely to be found

disabled even when the variables of their age, education and

experience are taken into account.  Carrao v. Shalala, 20 F.3d 943,

10

1   949 (9th Cir. 1994) (citing Yuckert, 482 U.S. at 153).  "The step

2   two inquiry is a de minimis screening device to dispose of

3   groundless claims." Smolen, 80 F.3d at 1290.  An overly stringent

4   application of the second stage criteria would violate the statute

5   because benefits would be denied to claimants who meet the

6   statutory definition of disabled.  Carrao, 20 F.3d at 949.  A

7   finding that the impairment is "not severe" must be "clearly

8   established by medical evidence;" if it is not clearly established,

9   the sequential evaluation process must be continued.  SSR 85-28.

10       To determine whether the ALJ's finding is supported by

11  substantial evidence, the Court considers the record as a whole.

12  Walker, 546 F.2d at 818.  The Court finds a medically determinable

13  explanation in the record for Plaintiff's complaints of neck and

14  shoulder pain and numbness in her hand.  In May, 1999, Dr.

15  Warbritton observed a significant grip strength loss in the right

16  hand and concluded that there were permanent residuals in

17  Plaintiff's upper back and neck which would preclude her from heavy

18  lifting.  (Tr 134-35).  Notably, the Plaintiff sought treatment on

19  several occasions for these symptoms in the years following Dr.

20  Warbritton's diagnosis.  (Tr 287, 289, 291-94, 295-97, 299, 323-25,

21  327).  Furthermore, the February 17, 2004 EMG evidence Plaintiff

22  submitted to the Appeals Council does show moderately severe carpal

23  tunnel syndrome and right cubital tunnel syndrome.

24       Plaintiff also submits new evidence for this Court to review

25  and requests that, on remand, Defendant be instructed to reconsider

26  the ALJ's findings in light of this evidence.  A federal court may

27  remand to the Commissioner of SSA "upon a showing that there is new

28                                      11

evidence which is material and that there is good cause for the
failure to incorporate such evidence into the record in a prior
proceeding. . . ."  42 U.S.C. § 405(g) (citations omitted); see
Allen v. Sec'y of Health and Human Servs., 726 F.2d 1470, 1473 (9th
Cir. 1984).

Plaintiff introduces two documents prepared by physicians.
The first document is a "History and Physical Examination" dated
September 30, 2004, proposing surgery to relieve Plaintiff's
symptoms of carpal tunnel syndrome and to remove hardware causing
her pain in her right ankle.  The second document is an "Operative
Report" dated December 29, 2004, describing the surgery removing
hardware from Plaintiff's ankle.  Because this evidence was
unavailable at the time of the hearing in February, 2004, good
cause is shown.  Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.
1990); Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir. 1988).

The remaining inquiry is whether this new evidence is
material.  New evidence is material if it "bears directly and
substantially on the matter in dispute" and if "there is a
reasonable possibility that the new evidence would have changed the
outcome of the . . . determination.'"  Booz v. Sec'y of Health &
Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984) (quoting
Dorsey v. Heckler, 702 F.2d 597, 604-05 (5th Cir. 1983) (internal
quotation marks and citations omitted).

The Operative Report describing surgery on Plaintiff's right
ankle is not material.  Although the evidence raises the inference
that Plaintiff's condition has not improved, it does not expressly
state or necessarily imply that pain in the right ankle has

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

increased.  To the contrary, the purpose of the surgery was to relieve the pain caused by the hardware.  Moreover, the ALJ found Plaintiff had a severe impairment in her right ankle but concluded nonetheless that she could perform other substantial gainful activity.  Thus, the Operative Report would not have changed the outcome of the case.

The medical evidence proposing surgery to relieve Plaintiff's symptoms caused by carpal tunnel syndrome, however, bears directly and substantially on the severity of Plaintiff's pain and numbness in her right arm and hand, a matter clearly in dispute.  Defendant argues that the EMG evidence was properly rejected by the Appeals Council because it would not have changed the ALJ's final determination, i.e., that Plaintiff could perform sedentary work.  Yet, the ALJ did not consider, nor did Defendant address, the new evidence of the recommended wrist surgery.  Moreover, that evidence belies the ALJ's reasoning that the impairments were not severe because Plaintiff was only prescribed conservative treatments; the evidence suggests that surgery has been prescribed.  Finally, given the state of the record, the new evidence is relevant regarding the disabling effects of the carpal tunnel syndrome, particularly whether the condition precludes or diminishes Plaintiff's ability to perform sedentary work.[6]

---

[6] "Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity . . . . for repetitive hand-finger actions." Social Security Ruling 96-9p, Determining Capability to Do Other Work -- Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, 61 Fed. Reg. 34,478, 34,482 (July 2, 1996).  "Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a

United States District Court

For the Northern District of California

1   Therefore, the Court remands to Defendant to consider at step

2   two the new evidence and any evidence Plaintiff has since acquired

3   concerning any functional limitations arising from her right carpal

4   tunnel and right cubital tunnel syndromes.  If these impairments

5   are determined at step two to be severe, Defendant must reconsider

6   the prior findings at step three through five in that light.

7   II.   Credibility

8        Plaintiff contends that the ALJ's credibility findings at step

9   three concerning her knee pain and limited use of her hand were not

10  sufficiently specific and that he did not provide clear and

11  convincing reasons for discounting her testimony.  Defendant cites

12  the ALJ's discussion of inconsistencies in the record, Plaintiff's

13  own self-reported physical abilities and Plaintiff's demeanor at

14  the hearing to show that the ALJ's findings were specific and

15  consistent with substantial evidence.

16       In Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986), the Ninth

17  Circuit developed a threshold test to determine the credibility of

18  a claimant's subjective symptom testimony.  Under Cotton, a

19  claimant "must produce objective medical evidence of an underlying

20  impairment 'which could reasonably be expected to produce the pain

21  or other symptoms alleged.'"  Bunnell v. Sullivan, 947 F.2d 341,

22  344 (9th Cir. 1991) (en banc) (quoting Cotton, 799 F.2d at 1407-

23  08); see also Smolen, 80 F.3d at 1282.  Cotton requires "only that

24  the causal relationship be a reasonable inference, not a medically

25

26  _____

27  significant erosion of the unskilled sedentary occupational base."
    Id.

28
                                14

proven phenomenon." <u>Smolen</u>, 80 F.3d at 1282.  Thus, a claimant is not required to produce objective medical evidence of the pain itself or its severity.  <u>Id.</u> (citing <u>Bunnell</u>, 947 F.2d at 347-48). "It is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." <u>Cotton</u>, 799 F.2d at 1407; <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989).

Once a claimant meets the <u>Cotton</u> test, "the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupportable by objective evidence. Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be 'clear and convincing.'" <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995) (quoting <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)); <u>Smolen</u>, 80 F.3d at 1281.  In determining whether a plaintiff's testimony concerning the severity of her symptoms is credible, the ALJ may properly consider: (1) ordinary techniques of credibility evaluation, such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities.  <u>Smolen</u>, 80 F.3d at 1273.

Defendant argues that the ALJ properly discredited Plaintiff's knee pain testimony because she reported that she stopped working

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  on March 31, 2003 due to pain in her knee and ankle, yet her

2  reports of severe knee pain did not actually begin until about July

3  21, 2003, four months after she stopped working.  (Tr 21, 293,

4  335).  However, the record reflects that Plaintiff began reporting

5  pain in her right knee as early as December, 2002.  (Tr 296).

6  Furthermore, Plaintiff testified at the hearing that, before she

7  stopped working, her knee pain was so severe that she had to take

8  many sick days and would hide in the bathroom at work crying

9  because of the pain.  (Tr 334-35, 344).

10      Defendant also contends that the ALJ's credibility

11  determination was correct based on the fact that Plaintiff's

12  physicians only prescribed conservative treatment for the knee

13  pain.  Defendant cites Meanel v. Apfel for the proposition that

14  subjective pain complaints can be properly discredited where a

15  claimant receives conservative treatment.  172 F.3d 1111, 1113 (9th

16  Cir. 1999).  Unlike the claimant in Meanel, however, Plaintiff

17  passes the threshold test articulated in Cotton.  Here, the ALJ

18  found objective medical evidence of a severe impairment, which

19  could account for some degree of pain in Plaintiff's right knee.

20  (Tr 20).  Moreover, the ALJ in Meanel rejected the claimant's

21  testimony because (1) her doctor failed to prescribe, and the

22  claimant failed to seek, medical treatment; (2) the claimant could

23  not explain the discrepancy between her pain testimony and the

24  conservative treatment she had received; and (3) the claimant's

25  testimony was otherwise inconsistent with her own physician's

26  findings.  172 F.3d at 1114.  The fact that the claimant received

27

28

16

conservative treatment was a factor in the <u>Meanel</u> court's analysis but the court did not suggest that this fact alone was dispositive. Similarly, Plaintiff's conservative treatments may have been an appropriate factor in the ALJ's credibility determination but this factor alone does not provide a clear and convincing reason for rejecting Plaintiff's testimony.

Defendant also argues that there is affirmative evidence that Plaintiff was malingering concerning whether the pain limited her physical abilities.  The ALJ noted that Plaintiff admitted she could cook, clean, shop with her son, drive to her appointments, when necessary, and climb a flight of thirty stairs to her apartment, when necessary.  (Tr 339, 346-47).  Defendant contends that these admissions were inconsistent with Plaintiff's assertion that she could not perform sedentary work and, thus, provided further support for the ALJ's credibility finding.  However, Plaintiff correctly points out that the ALJ failed to acknowledge the qualifying statements Plaintiff made regarding these admissions.  Plaintiff testified that she tried to do some housework and cook "a little bit, with [her son's] help and his daughter" but that her son "does the majority of work in the house." (Tr 339).  Plaintiff also stated that her son helps her shop and that she must sit in the car after picking the items out because she can't stand long in the check-out lines.  (Tr 346-47). Plaintiff admitted to driving a car but stated that she had to learn to drive with her left foot and also that her son takes her to her doctor's appointments the "majority of the time." (Tr 346).

17

Furthermore, Plaintiff testified that she could climb up and down a flight of stairs but also stated that the stairs act as a deterrent and the reason she spends a "majority of the time . . . at home." (Tr 347).

Finally, Defendant argues that the ALJ properly discredited Plaintiff's testimony because of her demeanor at the hearing.  The ALJ described Plaintiff as presenting with "great elaboration of her aches and pains, with multiple moans and groans."  (Tr 21). Defendant contends that the ALJ was entitled to rely on his observations of Plaintiff in finding her not credible over all. However, "the ALJ may not rely on his own observations of the claimant at the hearing as the sole reason for rejecting the claimant's complaints." Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing Fair, 885 F.2d at 602).  Although the ALJ did not rely solely on observations of Plaintiff's demeanor at the hearing, the additional fact that Plaintiff only received conservative treatment for her pain does not suffice to amount to clear or convincing reasons to discount Plaintiff's credibility.

Therefore, the Court instructs Defendant on remand to provide clear and convincing reasons for rejecting Plaintiff's testimony of her physical limitations arising from pain in her right knee, or to give her testimony due weight.

III. Medical Vocational Guildelines

Plaintiff argues that the ALJ's use of the Medical-Vocational Guildelines (Grids) was improper because Plaintiff has a significant limitation from a severe non-exertional impairment in

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

her right arm and hand.  Defendant contends that the ALJ's use of the Grids was proper because substantial evidence supported a finding that Plaintiff had the RFC to perform sedentary work.

The Grids are administrative tools that the Commissioner may use at step five of the disability evaluation.  Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).  Based on age, education, work experience, and "exertional capacity," the Grids determine the employability of claimants with "substantially uniform levels of impairment."  Id.; see also 20 C.F.R. pt. 404, subpt. P, app. 2. However, the ALJ may rely on the Grids only when they "accurately and completely describe the claimant's abilities and limitations." Burkhart, 856 F.2d at 1340; see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999).  If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional (not strength-related) limitations that are not covered by the Grids. 20 C.F.R., pt. 404, subpt. P., app. 2 § 200.00(d),(e).  When a claimant suffers from non-exertional impairments that are "sufficiently severe" to limit significantly the range of work permitted by his or her exertional abilities, the Grids are inapplicable.  Tackett, 180 F.3d at 1102 (citing Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577 (9th Cir. 1988)).  In such instances, the ALJ must consider the testimony of a vocational expert and identify specific jobs that are within the claimant's capabilities.  Burkhart, 856 F.2d at 1340.  Here, the ALJ accepted the vocational expert's testimony that Plaintiff could

19

not perform her past work but did not question him regarding the range of work or specific jobs Plaintiff could perform within her abilities.  Rather, the ALJ consulted the Grids directly.

Plaintiff argues that medical and other evidence shows the existence of a significant impairment in her right arm and hand causing non-exertional limitations.  Given the Court's decision to remand on whether Plaintiff's right carpal tunnel and cubital tunnel syndromes constitute a severe impairment, the Court cannot determine whether the use of the Grids is proper.  However, if, on remand, Defendant finds Plaintiff's carpal tunnel and cubital tunnel syndromes constitute a severe impairment causing non-exertional limitations "that significantly limit the range of work permitted by [her] exertional abilities," then use of the Grids would be improper.  Desrosiers, 846 F.2d at 577 (citations omitted).

CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's and Defendant's cross-motions for summary judgment (Docket No. 18 and 21) and grants Plaintiff's motion to remand (Docket No. 18) for further proceedings as instructed.

IT IS SO ORDERED.

Dated: 10/27/05

_____
CLAUDIA WILKEN
United States District Judge

20

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28